IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| DARIA AVENT,<br>Plaintiff,<br><br>v.<br><br>HONEYWELL INTERNATIONAL, INC.,<br>Defendant. | Civil Action No. 3:25CV600 (RCY) |

**MEMORANDUM OPINION**

In this employment dispute, Plaintiff Daria Avent ("Avent") alleges Defendant Honeywell International, Inc. ("Honeywell") engaged in racial discrimination and retaliation, disability discrimination and retaliation, wrongful or constructive discharge, and created a hostile work environment. The case is before the Court on Defendant's Motion to Dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of Counts One through Eight, Thirteen, and Fourteen for failure to state a claim upon which relief can be granted. The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court granted-in-part and denied-in-part the Motion to Dismiss.[1]

## I. RELEVANT PROCEDURAL HISTORY

Plaintiff filed an eighteen-count Complaint on August 1, 2025, alleging numerous violations of federal and state law against the Defendant. Compl., ECF No. 1. On December 10, 2025, Defendant filed a Motion to Dismiss and Memorandum in Support thereof seeking dismissal

[1] On September 21, 2026, the Court issued an Order granting in part and denying in part the Motion to Dismiss, promising an opinion to follow. Order, ECF No. 15. This Memorandum Opinion explains the Court's reasoning underpinning that Order.

of Counts One, Two, Three, Four, Five, Six, Seven, Eight, Thirteen, and Fourteen. Mot. Dismiss, ECF No. 8; Mem. Supp., ECF No. 9. Plaintiff filed a Memorandum in Opposition to Defendant's Motion to Dismiss on January 23, 2026. Resp. Opp'n, ECF No. 13. On February 6, 2026, Defendant filed its Reply, ECF No. 14, rendering the Motion to Dismiss ripe for review.

## II. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citations omitted); *see also Martin*, 980 F.2d at 952.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that

a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.*

When deciding a motion to dismiss under Rule 12(b)(6), the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Such a standard, however, does not require accepting any unreasonable inferences or a plaintiff's legal conclusions. *Id.* At the motion to dismiss stage, the Court may consider the face of the complaint, documents attached to the complaint, documents attached to the motion to dismiss that are integral to the complaint and whose authenticity is unchallenged, and matters of public record subject to judicial notice. *Id.*

## III. RELEVANT FACTUAL ALLEGATIONS

Plaintiff, a black woman, began her employment with Honeywell in October 2017 and has worked as a Lead Research and Development ("R&D") Technician at Honeywell's Colonial Heights, Virginia facility. Compl. ¶¶ 5, 12–13, ECF No. 1. Plaintiff's position was technical in nature and distinct from production or manual labor roles. *Id.* ¶ 4.

### A. Plaintiff Is Injured at Work

On January 18, 2023, Plaintiff sustained an injury to her right knee while working, which compounded an existing disability affecting her left leg. *Id.* ¶ 15. Plaintiff reported the injury to her supervisor and requested workplace accommodation; however, Plaintiff's supervisor discouraged her from filing a worker's compensation claim and denied the requested accommodation. *Id.* ¶¶ 15–17, 20–22.

On May 5, 2023, Plaintiff commenced short-term disability and Family and Medical Leave Act ("FMLA") leave as her condition worsened. *Id.* ¶ 18. She returned to work on May 30, 2023, on restrictions imposed by her medical provider, but Plaintiff states that Defendant continued to

assign her duties that exceeded those restrictions. *Id.* ¶¶ 19–22. On August 23, 2023, Plaintiff's doctor confirmed that she was restricted to seated desk work via a Reasonable Accommodation Form, but on the next day, Human Resources ("HR") Manager Brian Knabel told Plaintiff that she had to return to full duty or be placed on leave. *Id.* ¶¶ 23–26. Plaintiff was placed on short-term disability until October 5, 2023. *Id.*

**B. Plaintiff Returns to Work and Is Reassigned Roles**

Plaintiff returned to work on October 5, 2023, but Defendant removed her from her prior R&D responsibilities and reassigned her to a production worker role, excluded her from R&D meetings, reassigned her workplace, and removed certain badge access privileges. *Id.* ¶¶ 27–29. Plaintiff states that upon her return, she was micromanaged and closely scrutinized while similarly situated white coworkers were not. *Id.* ¶ 29. Plaintiff claims she applied for eleven internal positions and that, despite being qualified, she was never interviewed or considered and that many of the positions were awarded to lesser qualified white employees. *Id.* ¶ 30.

Plaintiff states that "on multiple occasions, [she] attempted to raise her concerns internally" and that "[s]he sent emails to Defendant HR and participated in conversations with company representatives, including HR, management, and a Defendant investigator." *Id.* ¶ 31. Plaintiff states that she recorded several of her conversations with Defendant employees. *Id.* ¶¶ 32–33.

On November 15, 2023, Plaintiff timely filed a charge of discrimination with the EEOC, "alleging discrimination based on race (Black), disability, and retaliation for engaging in protected activity." *Id.* ¶ 11; *see also* Mem. Supp. Ex. 1 (hereinafter "EEOC Charge"), ECF No. 9-1.[2]

[2] Defendant acknowledges that the EEOC Charge is not submitted or attached in Plaintiff's Complaint; however, Defendant asserts that since the EEOC Charge is "central to Plaintiff's Complaint . . . specifically referenced in the same" and because there is "no question as to its authenticity," consideration of the document does not convert Defendant's Motion to Dismiss into a motion for summary judgment. The Court agrees and finds that consideration of the EEOC Charge is proper. *See Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

### C. Plaintiff Resigns from Honeywell

On February 6, 2024, Plaintiff submitted a written complaint to her supervisor "detailing the persistent pattern of discriminatory treatment, denial of accommodation, and retaliation" and informed her supervisor that she would be resigning on March 1, 2024. Compl. ¶ 36. On February 9, 2024, Plaintiff elevated this communication to senior executives. *Id.* ¶ 37. On February 12, 2024, Plaintiff was informed that her resignation was effective February 9, 2024, and she was directed to leave the premises. *Id.* ¶¶ 38–39. On May 6, 2025, the EEOC issued a dismissal and notice of rights to Plaintiff. Mem. Supp. 3, ECF No. 9.

## IV. ANALYSIS

In the instant Motion, Defendant seeks dismissal of Counts One, Two, Three, Four, Five, Six, Seven, Eight, Thirteen, and Fourteen. These Counts assert the following claims:

| | |
|---|---|
| Count One: | Race discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.* |
| Count Two: | Race discrimination in violation of the Virginia Human Rights Act ("VHRA"), Va. Code § 2.2-3905(B)(1). |
| Count Three: | Race retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a). |
| Count Four: | Race retaliation in violation of the VHRA, Va. Code § 2.2-3905(B)(4)). |
| Count Five: | Wrongful discharge, or in the alternative, constructive discharge in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1). |
| Count Six: | Wrongful discharge, or in the alternative, constructive discharge based on race in violation of the VHRA, Va. Code § 2.2-3905(B)(1). |
| Count Seven: | Hostile work environment based on race in violation of Title VII, 42 U.S.C. § 2000e *et seq.* |
| Count Eight: | Hostile work environment based on race in violation of the VHRA, Va. Code § 2.2-3905(B)(1) and (4). |
| Count Thirteen: | Wrongful discharge, or in the alternative, constructive discharge in violation of the ADA, 42 U.S.C. § 12101 *et seq*. |
| Count Fourteen: | Wrongful discharge, or in the alternative, constructive discharge based on disability in violation of the VHRA, Va. Code § 2.2-3905(B)(1). |

**A. Counts Five, Six, Thirteen and Fourteen Are Procedurally Barred for Lack of Administrative Exhaustion[3]**

Defendant argues that Counts Five and Six should be dismissed because Plaintiff failed to exhaust her administrative remedies under the EEOC. Mem. Supp. 5–7. Defendant also argues that Counts Thirteen and Fourteen should be procedurally barred because these claims do not reasonably relate to Plaintiff's EEOC Charge. *Id.* at 8–10.

For the reasons that follow, the Court grants Defendant's Motion to Dismiss with respect to Counts Five, Six, Thirteen, and Fourteen.

1. Counts Five and Six Are Procedurally Barred

Both Title VII and VHRA require administrative exhaustion of claims alleging discriminatory acts before a plaintiff can bring such a claim in federal court.

> Before a Title VII plaintiff can bring a formal suit, he must file an administrative charge with the Equal Employment Opportunity Commission (EEOC). This charge frames the scope of future litigation. "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit."

*Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)). Courts have found that if "the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen

[3] Counts Five and Six are discussed first because Defendant's arguments regarding the remaining claims are predicated on whether Counts Five and Six are dismissed. Count Five involves Wrongful Discharge, or in the Alternative, Constructive Discharge in violation of Title VII. Count Six involves Wrongful Discharge, or in the Alternative, Constructive Discharge in violation of Va. Code § 2.2-3905(B)(1).

These claims are analyzed together as there are similar exhaustion requirements for each. *See* Va. Code Ann. § 2.2-3908 ("An aggrieved person may commence a timely civil action in an appropriate general district or circuit court having jurisdiction over the person who allegedly unlawfully discriminated against such person in violation of this chapter. Any such civil action may only be filed, if at all, within 90 days of the complainant's receipt of a notice of his right to file a civil action pursuant to § 2.2-3907."). Additionally, Va. Code §§ 2.2-3907 allows for the EEOC Notice of Right to Sue to fulfil the exhaustion requirement in state court. *See* Va. Code § 2.2-3907(I) ("For any complaint or charge of discrimination for which the complainant has received a Notice of Right to Sue from the E.E.O.C., the general district or circuit court having jurisdiction shall accept the E.E.O.C. Notice of Right to Sue as a notice of the right to file a civil action under subsection H.").

from an investigation thereof, they are procedurally barred." *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). For its part, Va. Code § 2.2-3907 outlines the process by which "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice may file a complaint . . . with the Office of Civil Rights of the Department of Law (the Office)." Va. Code Ann. § 2.2-3907(A). Within the Office, the Division of Human Rights (FEPA) oversees the VHRA. *Id.* § 2.2-520(C)(2). Private citizens may only sue under the VHRA once they have "been provided a notice of [their] right to file a civil action pursuant to § 2.2-3907." *Id.* § 2.2-3908(A). Only "[u]pon receipt of a written request from the complainant," will FEPA "issue a notice of the right to file a civil action." *Id.* § 2.2-3907(H).

Here, Defendant argues that Plaintiff's EEOC Charge filed on November 15, 2023, did not include any claims of race-based wrongful or constructive discharge and that those claims are not reasonably related to the EEOC Charge. Mem. Supp. 6. Defendant states that these claims, Counts Five and Six, should therefore be dismissed as Plaintiff failed to exhaust her administrative remedies. *Id*. Defendant also argues that termination is a "discrete act" that on its own, constitutes a separate actionable unlawful employment practice and that Plaintiff should have filed a separate EEOC charge involving these discrete incidents. *Id*.

Plaintiff contends that Defendant misapplies the exhaustion requirement and improperly narrows the scope of claims that may reasonably follow from an administrative investigation. Resp. Opp'n, 11, ECF No. 13. Furthermore, Plaintiff states that the wrongful or constructive discharge claims are reasonably related to the alleged discrimination and could be expected to follow from a reasonable administrative investigation. *Id*. at 12.

Here, Defendant's arguments prevail. Plaintiff filed her EEOC Charge on November 15, 2023, months before Plaintiff's February 2024 email and Defendant's actions that form the basis of Plaintiff's wrongful or constructive discharge claim. EEOC Charge; Compl. ¶ 156. Plaintiff

does not allege any additional or ongoing acts of discrimination or retaliation between the filing of her EEOC Charge in November 2023 and her resignation email in February 2024. Thus, Plaintiff's wrongful or constructive discharge claims appear to be independent from the facts alleged in the EEOC Charge. *See Sullivan v. Perdue Farms*, 133 F. Supp. 3d 828, 835 (E.D. Va. 2015) (discussing that the plaintiff's alleged constructive discharge occurred one month after the latest date of discrimination listed in the plaintiff's EEOC charge, and that the EEOC charge did not include mention that the discrimination was ongoing, thus rending the constructive discharge a distinct event).

While Plaintiff's wrongful or constructive discharge claims against Defendant include similar underlying facts as contained in the EEOC Charge, the EEOC Charge does not contain any language that could be construed as making a claim of or otherwise related to subsequent wrongful or constructive discharge. As previously noted, her charge did not specifically allege *ongoing* discrimination or retaliation and instead focused on discrete events predating the charge.

Based on the timeline of events alleged and the contents of Plaintiff's EEOC Charge, the Court finds that Plaintiff's claims regarding wrongful or constructive discharge are procedurally barred because Plaintiff failed to exhaust her administrative remedies with respect to that discrete discriminatory act. *See Knight v. McCarthy*, 439 F. Supp. 3d 744, 755 (E.D. Va. 2020) ("Plaintiff further contends that her constructive discharge claims are reasonably related to her original EEOC complaint and are inextricably intertwined with her retaliation claims. But plaintiff has provided no record evidence to support this argument, nor is there any. Plaintiff made her initial informal EEOC complaint alleging retaliation based on her prior protected activity on September 17, 2015, three months before she submitted her retirement application. Thus, it is abundantly clear that plaintiff's retaliation claims were independent of any constructive discharge claim.").

Defendant also argues that even if Counts Five and Six are not procedurally barred, they should be dismissed because they fail to state a claim upon which relief may be granted. Mem. Supp. 8. However, because Counts Five and Six are procedurally barred, the Court need not address the sufficiency of Counts Five and Six.

2. Counts Thirteen and Fourteen Are Procedurally Barred

In Counts Thirteen and Fourteen, Plaintiff alleges that Defendant is liable for wrongful or constructive discharge in violation of the ADA and the VHRA. Modeled after Title VII of the Civil Rights Act of 1964, the ADA requires that a plaintiff must exhaust their administrative remedies by filing a charge with the EEOC before pursuing litigation in federal court. 42 U.S.C. §§ 2000e-5(b), (f)(1). And as discussed above, private citizens may only sue under the VHRA once they have "been provided a notice of [their] right to file a civil action pursuant to § 2.2-3907." Va. Code Ann. § 2.2-3908(A).

Defendant contends that Plaintiff's EEOC Charge filed on November 15, 2023, did not include any claims of disability-based wrongful or constructive discharge and that those claims are not reasonably related to the filing. Mem. Supp. 5. The Court agrees.

While Plaintiff's EEOC Charge made mention of the positions she internally applied for, her request for reasonable accommodation based on her disability, and her alleged demotion following her return from FMLA leave, absent from that filing are any claims of disability-based wrongful or constructive discharge. EEOC Charge. Nor does the Court find that claims of unlawful discharge are reasonably related to the claims made in the EEOC Charge. As noted in the Court's analysis of Counts Five and Six, the EEOC Charge was filed several months *before* Plaintiff's February email and subsequent registration, the very basis of Plaintiff's wrongful or constructive discharge claims. Upon careful review of the timeline of events alleged and the

contents of Plaintiff's EEOC Charge, the Court grants the Motion to Dismiss with respect to Counts Thirteen and Fourteen because Plaintiff failed to exhaust her administrative remedies.

**B. Plaintiff Sufficiently States a Claim on Counts One and Two[4]**

In Counts One and Two, Plaintiff alleges that Honeywell is liable for race discrimination in violation of Title VII and the VHRA. Defendant argues that Plaintiff has not sufficiently alleged an adverse employment action nor identified similarly situated employees who receive more favorable treatment. Compl., ¶¶ 44–54; Mem. Supp. 11–13. For the reasons that follow, the Court denies Defendant's Motion to Dismiss with respect to Counts One and Two.

"Title VII prohibits an employer from 'discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race.'" *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting 42 U.S.C.A. § 2000e–2(a)), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012). "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Id.* "[W]hile a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, [the] [f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Here, Defendant argues that Counts One and Two "fail because the Complaint does not include facts sufficient to state a claim for disparate treatment." Mem. Supp. 10. Defendant also

[4] The Virginia Human Rights Act claims related to racial discrimination are analyzed under the same framework as Title VII; therefore, the analysis regarding Count One and Two is combined. *See Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) ("Claims of racial discrimination in employment under § 1981 and § 1983 are evaluated under the Title VII framework." (citing *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004))); *McCarty v. City of Alexandria*, No. 1:24-CV-600, 2024 WL 5081956, 2024 U.S. Dist. LEXIS 224522 (E.D. Va. Dec. 11, 2024) ("the Court will analyze Count One (Title VII hostile work environment claim) and Count Two (VHRA hostile work environment claim) together, because Title VII and the VHRA use substantially identical language.").

contends that Plaintiff's general claims are insufficient because they do not contain any information about the purported comparators. *Id.* at 12. Defendant argues that Plaintiff has failed to identify an adverse employment action and that the current claims are insufficient and only show micromanagement, close scrutiny, exclusion from meetings, and refusal to grant access to physical assistance from other employees. *Id.* at 13–14.

In response, Plaintiff states that "Defendant's arguments are premised on a heightened pleading standard that does not apply . . . at the motion to dismiss stage." Resp. Opp'n 6. Plaintiff argues that her Complaint pleads facts that are sufficient to satisfy the elements of the statutory cause of action. *Id.* Specifically, Plaintiff argues that she has identified comparators ("white technicians returning from [short-term disability] or FMLA leave were restored to their prior duties . . . and that promotional positions were awarded to less-qualified white employees," *id.* at 7) and that she faced adverse employment action ("stripped of R&D responsibilities, reassigned to menial production tasks . . . excluded from meetings . . . denied advancement opportunities, and removed from the workplace," *id.* at 8). Ultimately, the Court agrees with Plaintiff's assessment with respect to Counts One and Two.

Here, Plaintiff's Complaint contains allegations that sufficiently rise above the speculative level. Plaintiff has alleged that she is a member of a protected class; was performing satisfactorily; faced adverse employment actions; and was treated differently from similarly situated employees outside the protected class. First, the Complaint includes that Plaintiff is Black. Compl. ¶ 12. Second, "[Plaintiff's] job performance remained strong, and she received positive feedback from colleagues and management." *Id.* ¶ 14. Third, when Plaintiff returned to work on October 5, 2023, she "was stripped of her prior duties and demoted in practice—if not in title—to a production worker role" in which Plaintiff "was assigned to clean machines, mop floors, cut plastic, and perform other menial tasks that bore no resemblance to her prior R&D responsibilities." *Id.* ¶ 27.

Plaintiff's former workplace was "reassigned to others" and she was "no longer included in R&D briefings." *Id.* ¶ 28. Furthermore, Plaintiff claims that she "applied for at least eleven different internal promotional opportunities" but was "never interviewed or considered" despite being qualified. *Id.* ¶ 30. Fourth, Plaintiff alleges that "[m]ost positions were awarded to white employees with lesser qualifications." *Id.* "White technicians who had received [short-term disability] or FMLA leave returned to their prior duties without demotion or discipline." *Id.* ¶ 29. Altogether, Plaintiff's factual allegations are enough to raise a right to relief above the speculative level and survive Defendant's Motion to Dismiss.

Defendant asks the Court to apply a heightened standard that is inappropriate at the pleading stage. The Court finds that Plaintiff has sufficiently pled facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Holloway v. Maryland*, 32 F.4th 293, 298 (4th Cir. 2022). Specifically, Plaintiff alleges that she faced disparate treatment and adverse employment action when compared to similarly situated white comparators, in this case white R&D technicians who returned from short-term disability or FMLA. Compl. ¶ 29.

Defendant argues that this level of detail is insufficient. Mem. Supp. 11–13. The Court disagrees and finds that Defendant's sufficiency arguments are better suited at a later stage of litigation. *See Holloway*, 32 F.4th at 299 (acknowledging that the plaintiff's complaint was "thin on facts . . . suggesting racial motivation," but after identifying comparators with some detail of similarly, the plaintiff's complaint was sufficient to support an inference of racial discrimination); *see also Woods v. City of Greensboro*, 855 F.3d 639, 651 (4th Cir. 2017) ("The similarly situated analysis typically occurs in the context of establishing a prima facie case of discrimination, not at the 12(b)(6) stage.").

Taking Plaintiff's allegations as true, Plaintiff's claims of racial discrimination in Counts One and Two have stated a claim to relief that is plausible on its face. Therefore, Defendant's Motion to Dismiss with respect to Counts One and Two is denied.

**C. Counts Three & Four Fail to State a Claim**[5]

In Counts Three and Four, Plaintiff alleges that Honeywell retaliated against her for opposing racial discrimination, in violation of Title VII and the VHRA. Defendant contends that the Complaint does not sufficiently connect Plaintiff's protected activity to the allegedly retaliatory treatment. Mem. Supp. 18. For the reasons that follow, Defendant's Motion to Dismiss is granted with respect to Counts Three and Four.

"The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman*, 626 F.3d at 190.

Defendant argues that Plaintiff has insufficiently pled facts to establish a claim for retaliation. Mem. Supp. 15. Specifically, Defendant claims that Plaintiff has not identified "any protected activity specific to race" for which "she was specifically subjected to any adverse action." *Id.* at 16. Defendant argues that the adverse actions alleged were in response to Plaintiff's disability and accommodation requests, not race. *Id.* Regarding the EEOC Charge that Plaintiff filed on November 15, 2023, Defendant argues that the adverse actions alleged in Plaintiff's Complaint, *see* Compl. ¶¶ 20–28, all occurred prior to November 15, 2023, and therefore could not be the basis of a retaliation claim if the protected activity Plaintiff engaged in is the EEOC complaint which occurred later. Mem. Supp. 17.

---

[5] Similar to race discrimination claims, race retaliation claims pursuant to Title VII and the VHRA are analyzed together. *See, e.g.*, *Morton v. Froehling & Robertson, Inc.*, 786 F. Supp. 3d 965, 976 (E.D. Va. 2025), *aff'd*, 2025 WL 3707798 (4th Cir. Dec. 22, 2025).

Additionally, Defendant argues that Plaintiff's statement that she "attempted to raise these concerns individually" to Defendant HR confuses the timeline since the purported conversation with HR occurred after the listed retaliatory incidents. *Id.* Defendant also contends that Plaintiff has failed to plead a causal connection between the protected activity and the alleged retaliatory act. *Id.* Finally, Defendant states that besides the EEOC complaint, the only other clear instance Plaintiff alleges that she complained of racial discrimination was in her February 2024 email in which Plaintiff resigned. *Id.* at 18.

The Court finds that Plaintiff sufficiently pleads that she engaged in protected activities (complaining to supervisors about race-based workload, reporting to HR she was treated less favorably because of her race) and that she faced adverse employment actions (removal from duties, reassignment, restrictions on badge access, isolation, denial of advancement, etc.). *Id.* ¶¶ 27–29, 36–42, 63–65. However, Plaintiff has failed to adequately plead that her engagement in these protected activities resulted in adverse employment action or a causal connection between the protected activity and adverse employment action.

Here, the adverse employment actions identified in paragraph 65 of the Complaint have more to do with Plaintiff's disability and not her race. *Id.* ¶ 65. For example, Plaintiff claims adverse employment action occurred when Defendant reassigned her upon her "return from [disability] leave to a production worker role with menial tasks far beneath her qualifications." *Id.* Another adverse action is identified as Defendant "stripping Plaintiff of her R&D responsibilities and badge access to areas she previously managed." *Id.* However, Plaintiff does not sufficiently allege a causal connection to her engagement in protected activities with regard to race discrimination and these adverse actions. Rather, these actions appear to have occurred after Plaintiff returned from FMLA leave and requested a reasonable accommodation.

What is more, the timeline of events described in the Complaint does not support a theory of retaliation. The adverse actions described in paragraphs 27–30 occurred *before* Plaintiff states she "attempted to raise her concerns internally" with HR, as described in paragraphs 31–34. *Id.* ¶¶ 27–30, 31–34. It is difficult to see how the adverse actions could be causally linked to Plaintiff engaging in protected activities *after* the adverse actions. Even if this Court were to assume that the adverse actions described in paragraphs 27–30 occurred after Plaintiff's protected activities, Plaintiff's allegations still fail to sufficiently show a causal link. Plaintiff merely states that "[t]hese retaliatory acts . . . were causally connected to Plaintiff's protected activities and would dissuade a reasonable employee from continuing to assert their rights under Title VII." Compl. ¶ 66. That conclusory statement does not satisfy the pleading requirement.

Furthermore, while Plaintiff's EEOC Charge filed in November 2023 (a protected activity) does allege racial discrimination, the EEOC Charge was filed *after* the adverse actions[6] described in the Complaint. Given the importance of the timeline of events and the temporal proximity between the protected activity and adverse employment action, Plaintiff's allegations fail to establish the causal connection required for a retaliation claim. *See Earl v. Norfolk State Univ.*, 2014 WL 583972, at *10 (E.D. Va. Feb. 13, 2014) ("An employee need not prove causation itself at the prima facie case stage: rather, a close temporal relationship between the protected activity and the adverse action is sufficient to show a causal nexus. While evidence as to the closeness in time far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality." (cleaned up)).

[6] With the exception of alleged wrongful termination that occurred in February, but that claim is dismissed as discussed above with regard to Counts Five and Six. The same is true for the February email, which did include Plaintiff complaining about racial discrimination.

Ultimately, because Plaintiff has not causally connected her protected activity to the alleged retaliatory treatment, Defendant's Motion to Dismiss is granted with respect to Counts Three and Four.

**D. Counts Seven & Eight Fail to State a Claim**

Finally, the Court considers whether the alleged workplace conduct, viewed collectively, states a claim for a racially hostile work environment, as Plaintiff alleges in Counts Seven and Eight. Defendant argues that these should be dismissed because Plaintiff failed to allege any facts suggesting that Defendant's alleged harassment was based on Plaintiff's race. Mem. Supp. 20. Additionally, Defendant argues that the allegations fail to satisfy the high bar required to show severe or pervasive conduct, namely that the time period of the alleged conduct is approximately four months (between October 2023 and February 2024) and not at least twelve months as Plaintiff describes. *Id*. at 21.

Conversely, Plaintiff states that her claims should survive since a hostile work environment claim is based on the cumulative effect of the alleged conduct and that the Complaint has adequately alleged a pattern of race-based hostility extending over at least a year. Resp. Opp'n 14. Plaintiff claims that Defendant's arguments "invite the Court to minimize the pleaded conduct and resolve factual questions regarding severity, pervasiveness, and motivation" which is "inappropriate at the pleading stage." *Id*. at 15.

Ultimately, the Court finds that Counts Seven and Eight are insufficiently pled in the Complaint and should be dismissed.

> To survive dismissal of [plaintiff's] claim of a hostile work environment based on [plaintiff's] protected characteristics, [the plaintiff] must offer facts that plausibly support inferences that she was subjected to (1) unwelcome conduct, (2) based on her race . . . that was (3) severe or pervasive enough to make her work environment hostile or abusive and (4) imputable to her employer. She must also allege that her protected characteristic under Title VII was the but for cause of the alleged harassment. [Courts] consider several factors to evaluate whether the alleged working conditions are severe or pervasive enough to support a Title VII

> claim. These factors include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Laurent-Workman v. Wormuth*, 54 F.4th 201, 210–11 (4th Cir. 2022) (cleaned up).

While Plaintiff does not have to plead a prima facie case at this stage, she must allege facts that satisfy the elements of the cause of action above a speculative level. *Sunkins v. Hampton Roads Connector Partners*, 701 F. Supp. 3d 342, 352 (E.D. Va. 2023) (citing *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015)). Additionally, Plaintiff's claim that the Court cannot address this question at the motion to dismiss claim is incorrect. *Id*. ("Although the severity or pervasiveness of harassment can be a question of fact, a district court may dismiss a complaint that does not allege facts suggesting that the defendant's conduct was sufficiently severe or pervasive to alter the conditions of plaintiff's employment.").

Here, Plaintiff has not pled that her workplace was "permeated with discriminatory intimidation, ridicule, and insult." *Id*. Rather, Plaintiff's Complaint contains allegations that fail to rise to the severe and pervasive level. Plaintiff alleges Defendant assigned her more burdensome physical tasks, denied her assistance to perform these tasks; excluded her from meetings and projects, removed her R&D responsibilities, denied her advancement, and failed to investigate her complaints. Resp. Opp'n 14. However, on their face, Defendant's actions do not appear to have been race-based. *Dawson v. Rumsfeld*, 2006 WL 325867, at *4 (E.D. Va. Feb. 8, 2006) (denying plaintiff's hostile work environment claim at the motion to dismiss stage in finding that "[t]he vast majority of Plaintiff's allegations involve administrative actions that facially bear no relation to Plaintiff's race.").

Furthermore, the Complaint contains no mention of race-based verbal remarks or racially insulting conduct, and instead, Plaintiff seeks to address instances of conduct that are more akin to conduct in a disparate treatment claim than in a hostile work environment claim. *Dawson*, 2006

WL 325867, at *4 ("To the extent that Plaintiff seeks redress for any employment actions that were based on hidden race-based discrimination, her remedy lies in a disparate treatment claim. Were this Court to permit a hostile work environment claim premised on such allegations, it would be cognizing an end run around the required elements of a disparate treatment claim.").

Accordingly, the Court grants Defendant's Motion to Dismiss with respect to Counts Seven and Eight.

## V. CONCLUSION

For the reasons detailed above, Defendant's Motion to Dismiss was granted in part and denied in part. The Court granted the Motion to Dismiss as to Counts Three, Four, Five, Six, Seven, Eight, Thirteen, and Fourteen. The Court denied the Motion to Dismiss as to Counts One and Two. Accordingly, this matter will proceed on Plaintiff's remaining claims. *See* Order, ECF No. 15.

/s/ RCY
Roderick C. Young
United States District Judge

Date: November 23, 2026
Richmond, Virginia